IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA THOMAS-BAGROWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04 C 3544 |
| v. | ) | |
| | ) | District Judge |
| NORMAN MINETA, SECRETARY | ) | Wayne Andersen |
| OF THE DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the court on defendant Department of Transportation's motion for summary judgment [23]. Plaintiff Barbara Thomas-Bagrowski filed a complaint against her employer, the Federal Aviation Administration ("FAA"), alleging race discrimination, retaliation, and a hostile work environment. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Barbara Thomas-Bagrowski, a former management employee of the Federal Aviation Administration ("FAA"), bases her claims in the present litigation on an EEO administrative complaint filed against her employer in October 1998. (Plaintiff's Statement of Facts ¶ 1.)

The events on which Thomas-Bagrowski bases the current litigation began in 1997 while she was under the supervision of Joseph Yokley, the FAA regional human resources division manager. In November 1997, Yokely announced the availability of a permanent team leader

position in the human resources ("HR") division. (*Id.* at ¶ 2.) In response to Yokley's announcement, Thomas-Bagrowski and three other FAA employees applied for the position. *Id.* The four candidates were interviewed and ranked by a panel which did not include Yokley. (*Id.* at ¶ 3.) The panel placed Valerie Granahan, a white employee, at the top of the list and Thomas-Bagrowski third, behind another white candidate. (*Id.* at ¶¶ 3, 12.) However, the permanent position was later withdrawn when a hiring freeze was implemented and the FAA began to restructure. (*Id.* at ¶ 3.)

In June 1998, an HR team leader was chosen for a one year assignment outside of HR, creating a temporary position. (*Id.* at ¶ 5.) Instead of announcing the position, Yokely relied on the panel's previous evaluations for the permanent position to fill the temporary vacancy. (*Id.* at ¶ 6.) Based on these evaluations, Yokley assigned Valerie Granahan to the first six months of the year long vacancy and Thomas-Bagrowski to the second. (*Id.* at ¶ 63.) As the first six month term came to an end, Yokley chose to announce the position and solicit new applicants after being approached by employees regarding the temporary detail. Rather than allowing Thomas-Bagrowski to serve the full six months, Yokley divided the remaining time into six, thirty day assignments, one of which was given to Thomas-Bagrowski. (*Id.* at ¶ 7.) After being denied the full six month detail, Thomas-Bagrowski filed an EEO complaint against Yokley in October 1998 claiming race discrimination. (*Id.* at ¶ 69.) Thomas-Bagrowski alleges that after filing her EEO complaint, she became the subject of a hostile work environment and was retaliated against by her new team leader. (*Id.* at ¶¶ 72, 78.)

Thomas-Bagrowski points to events following the HR division's fall 1998 reorganization to support these allegations. As part of the reorganization, Thomas-Bagrowski's team was

dissolved and she was reassigned to the Airway Facilities team, led by David Pinner. (*Id.* at ¶ 14.) Prior to joining her new team, Thomas-Bagrowski was part of the Aviation Career Education ("ACE") program which was convenient, as some of the team's activities were situated in Milwaukee which is where she resides. (*Id.* at ¶ 16.) As a member of the ACE team, Thomas-Bagrowski regularly telecommuted and was allowed to do so by Yokley until the reorganization. (*Id.* at ¶¶ 17-8.) Following the reorganization, her new team leader required her to submit her telecommuting proposal to her new team for approval. The reorganization placed a greater emphasis on teamwork and the quality of customer service, holding the team as a whole accountable for the impact of one's telecommuting on these goals. (Local Rule 56.1(a) Statement of Facts "SOF" ¶¶ 19-22.) While it is unclear whether the telecommuting policy changed as part of the reorganization, it is clear that Thomas-Bagrowski did not follow the procedures given to her by her supervisor. Although she submitted her telecommuting proposal to her teammates, she refused to furnish them with the additional information they requested and instead took her proposal directly to Pinner. (Resp. to SOF ¶ 24.)

Presenting Pinner with her proposal, Thomas-Bagrowski told him she did not want her team to review it, and asked him to approve it for medical reasons under the Americans with Disabilities Act ("ADA"). *Id.* When asked about her condition, she told Pinner that her clinic had faxed over the information and that she was not in the mood to justify or explain her condition, nor did she feel that she should, or needed to provide more information. (*Id.* at ¶ 25.) The medical condition which Thomas-Bagrowski spoke of was intermittent lower back pain which she claims was the product of an October 1, 1998 injury. After acquiring this injury, she filed a claim with the Office of Workers' Compensation Programs ("OWCP") but her claim was

denied on May 13, 1999 for failure to provide medial documentation explaining her pain and its cause. (SOF ¶¶ 26-7; 53.)

Thomas-Bagrowski also bases her claims on incidents related to her requests for time off and sick leave. While division policy requires that employees coordinate their leave with team members, Thomas-Bagrowski refused to do so, telling Pinner she had cleared her leave requests with her former team and would not change her plans now that she was a member of a new team. (Resp. to SOF ¶ 30.) Despite her refusal to follow procedure, Pinner approved her leave. (*Id.* at ¶ 31.) In February of 1999, another conflict arose, this time related to Thomas-Bagrowski's requests for advance sick leave. She told Pinner that she had previously been given approval to take advanced sick leave whenever she felt she needed it. (*Id.* at ¶ 32.) Thomas-Bagrowski had, in 1997, received permission to take advanced sick leave up to two hundred and forty hours. However, this was meant to cover a period of time in which she was receiving cancer treatment. (*Id.* at ¶ 34.) The advanced sick leave request made to Pinner in 1999 was for routine medical matters and sick days for herself or her child, not any serious disability or ailment as is required under the FAA's sick leave policy. (*Id.* at ¶ 33.) As a result, Pinner notified Thomas-Bagrowski that her requests required new medical documentation. Via email, Pinner notified her of the type of medical documentation required for advance sick leave requests. (SOF ¶¶ 35-6.) Thomas-Bagrowski refused to provide more information, claiming Pinner's requests were "overwhelmingly excessive and unnecessary" and in violation of the Privacy Act. (*Id.* at ¶ 37.)

On March 5, 1999, Thomas-Bagrowski filed another claim with the Office of Workers' Compensation Program ("OWCP"), claiming her work environment was hostile and as a result she had developed shingles, making it impossible for her to work. (Resp. to SOF ¶ 38.)

4

Following her claim, Thomas-Bagrowski rarely reported to work and was placed on AWOL status. Due to insufficient medical documentation, her claim was denied by the OWCP, and she was discharged from employment by Pinner in September 1999. (*Id.* at ¶ 45.) Thomas-Bagrowski appealed her discharge to the Merit Systems Protection Board; however, her claim was dismissed, and she chose not to appeal its decision. (SOF ¶ 46.)

The Department of Transportation now seeks summary judgment on all three of Thomas-Bagrowski's claims.

## **DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 56, an entry of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In making this determination, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). One may find that there exists a genuine issue of material fact only if a "fair minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.

In evaluating whether there exists a genuine issue of material fact, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Id.* at 255. To defeat a party's motion for summary judgment it is not enough for the non-moving party to show that there exists "some metaphysical doubt as

5

to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e)*.

**I. Race Discrimination Claim**

In her current action, Thomas-Bagrowski first claims Yokley racially discriminated against her in violation of Title VII by denying her a temporary six month team leader position. To prove racial discrimination, a plaintiff must establish a *prima facie* case by demonstrating that (1) she is a member of a protected class, and that (2) she suffered an adverse employment action while (3) similarly situated employees outside of her protected group did not. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, when the defendant rebuts the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for the actions in question, the burden shifts back to the plaintiff, who must then demonstrate that the defendant's reasons were pretextual. *Crim v. Bd. of Educ. of Cairo School Dist. No. 1*, 147 F.3d 535, 540-41 (7th Cir. 1998). In determining whether an employer's stated reasons are pretext, the court's inquiry must focus on whether the reasons are "honest, not whether [they are] accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

The Department of Transportation seeks summary judgment on the grounds that Thomas-Bagrowski has not refuted the legitimate, non-discriminatory reasons put forth by FAA Regional Human Resources Division Manager Joseph Yokley. In this case, Thomas-Bagrowski alleges that Yokley selected both her and Valerie Granahan to serve six month details and only revoked the position when faced with complaints from white employees. (Resp. to SOF ¶¶ 6-7.)

However, the FAA has put forth legitimate, non-discriminatory reasons for Yokley's decision to appoint Granahan to a six month detail and subsequently open the position for additional applicants. Yokley has justified his decision to assign Granahan to a *temporary* six month detail by noting that he relied on the interview panel's decision to rank Granahan first among the candidates who had applied for the *permanent* team leader position. (SOF ¶ 6.) With specific reference to Thomas-Bagrowski's temporary assignment, Yokley asserts that he tentatively offered her the detail, yet intended to reevaluate the division's need after six months. (*Id.* at ¶ 7.) Yokely further explains his action by stating that, as Granahan's detail ended, he was approached by employees who, while not interested in a permanent position expressed interest in a temporary detail. The thought that employees, other than those who had applied for the permanent position, were interested in serving as team leader, is according to Yokley, what led him to solicit applicants for the remaining six months of the temporary detail. (*Id.* at ¶¶ 8-10.) Further, Yokely claims that his original decision to appoint Thomas-Bagrowski was a misguided attempt at affirmative action. Yet, he realized his actions were inappropriate as she was ranked third, not second by the panel. (*Id.* at ¶ 13.)

Thomas-Bagrowski fails to meet her burden, as she puts forth no evidence to prove that Yokley's reasons are pretextual. She goes no further than pointing out that Yokley admitted in his deposition that other employees had approached him about dividing the remaining six months into six, thirty day details. She offers no evidence to support her claim that these inquiries were the complaints of white employees or that Yokley's actions were motivated by anything other than his desire to offer interested employees a chance to serve in a leadership capacity. In her response to the Department of Transportation's statement of facts, Thomas-Bagrowski mentions

7

that reference to the panel's rankings for the permanent position was irrelevant as her claim relates to the assignment of employees to a temporary detail. (Resp. to SOF ¶ 12.) However, in determining whether the FAA has put forth legitimate, non-discriminatory reasons for Yokley's actions the concern is with whether his reasons were honest, not whether they were "wise or well considered." While it is possible that Yokley may have devised another, and perhaps even a better, procedure for assigning employees to the temporary detail, this possibility is irrelevant for purposes of this Court's evaluation. Without any evidence that Yokleys reasons are dishonest, Thomas-Bagrowski cannot succeed on this point.

Because Thomas-Bagrowski cannot refute the legitimate, non-discriminatory reasons put forth by the FAA, she cannot establish a case of race discrimination. For this reason, the Department of Transportation is entitled to summary judgment on her racial discrimination claim.

## II. Retaliation

Thomas-Bagrowski also alleges retaliation by David Pinner, leader of the Airways Facilities team, in response to her October 1998 EEO complaint. In order to succeed on a retaliation claim, a plaintiff must present sufficient evidence that: 1) she opposed an unlawful employment practice; 2) she suffered an adverse employment action; and 3) the adverse employment action was caused by her opposition to the unlawful employment practice. *David v. Caterpillar, Inc.,* 324 F.3d 851, 858 (7th Cir. 2003).

Thomas-Bagrowski claims she was retaliated against due to Pinner's refusal to accept her proposal to telecommute and her request for advance sick leave. First, with regard to her request to telecommute, Thomas-Bagrowski ignored her team members' requests for more information

and requested that Pinner accept her proposal as an accommodation for a back injury under the ADA. (Resp. to SOF ¶ 24.) She admits that her lower back pain was intermittent, which does not qualify as a disability for purposes of the ADA. (*Id.* at ¶ 53.) In this Circuit, "the temporarily disabled are not protected by the Americans with Disabilities Act." *Matthews v. Commonwealth Edison,* 128 F.3d 1194, 1197 (7th Cir. 1997). Further, an "intermittent, episodic impairment [sic] [is] not [a] disability[y]" for purposes of the ADA unless it is "a characteristic manifestation of an admitted disability." *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538 (7th Cir. 1995). As Thomas-Bagrowski does not claim that her lower back pain was symptomatic of an underlying disability, but that it was in fact her disability, she cannot establish that Pinner's decision to reject her telecommuting policy constitutes retaliation.

Further, the responsibility of commuting to and from the work place belongs to the employee not the employer. For purposes of this Circuit, commuting to and from work is not considered a major life activity that must be accommodated by one's employer. *Sinkler v. Midwest Property Management Ltd. Partnership,* 209 F.3d 678, 685 (7th Cir. 2000). The fact that Thomas-Bagrowski was allowed to telecommute under Yokley is irrelevant, as her claim relates to Pinner's refusal to allow her to do so. Despite the fact that she lived in Milwaukee and worked in Chicago, it was not the FAA's responsibility to accommodate Thomas-Bagrowski's commute. As a result, it cannot be said that Pinner's refusal to approve her telecommuting proposal qualifies as retaliation for the purposes of Title VII.

With regard to her requests for both annual leave and advance sick leave, Thomas-Bagrowski refused to follow the procedures which applied to all employees. While she refused to submit adequate medical documentation when requesting advanced sick leave, her teammates

9

followed the proper procedures and accordingly, their requests for advanced leave were approved. The Department of Transportation offers examples of several employees who made such requests in the proper manner and admit they were aware of what was required for their requests to be approved. (SOF ¶¶ 47-50.) Further, Pinner gave Thomas-Bagrowski several chances to provide adequate medical documentation to support her requests for advanced sick leave, even checking with an FAA physician to see if her documentation was adequate. (*Id.* at ¶¶ 42-3.) As a result, it cannot be said that Pinner's refusal to approve her request for advance sick leave qualifies as an adverse employment action, nor has she demonstrated the requisite causal connection between the alleged adverse employment action and her filing of an EEO complaint.

Thomas-Bagrowski cannot establish a *prima facie* case of retaliation, entitling the Department of Transportation to summary judgment.

## III. Hostile Work Environment

Finally, Thomas-Bagrowski alleges that she was subjected to a hostile work environment. To succeed on a claim of hostile work environment, one must show that her work environment was so severe that it altered the conditions of her employment. *Silk v. City of Chicago,* 194 F.3d 788, 804 (7th Cir. 1999). In evaluating a plaintiff's evidence, the court must consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (*quoting Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)).

In asserting her claim, Thomas-Bagrowski points to several things she feels are evidence of a hostile work environment. She alleges that Pinner's requests for medical documentation were "overwhelmingly excessive and unnecessary," and in violation of the Privacy Act. (SOF ¶ 37.) Additionally, she points to Pinner's requirement that she resubmit her requests for leave and her telecommuting schedule to her new team members. (Resp. to SOF ¶¶ 23; 30.)

While Thomas-Bagrowski was required to abide by these procedures, these details fail to establish that she was the victim of a hostile work environment. Although she offers examples of possibly tedious and time consuming FAA procedures, it cannot be said that any of these actions altered the conditions of her employment nor can it be said that they unreasonably interfered with her work performance. Thomas-Bagrowski does little more than demonstrate that Pinner required her to comply with FAA personnel policies which were mandatory for all employees. She puts forth nothing more than her personal belief that the requirements for medical documentation were" overwhelmingly excessive and unnecessary." (SOF at ¶ 37.) Ultimately, it was her failure to abide by these procedures, not Pinner' actions, which resulted in her AWOL status and eventual discharge. Further, despite the treatment which she claims is evidence of a hostile work environment, Pinner accepted Thomas-Bagrowski's leave request despite her failure to follow FAA procedure, and gave her several opportunities to submit the necessary documentation. (Resp. to SOF ¶ 31; SOF ¶¶ 42-3.)

These allegations fall short of satisfying the requirements needed to successfully maintain a claim of hostile work environment in this Circuit. As such, Thomas-Bagrowski fails to meet her burden, and the Department of Transportation is entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [23] is granted. This case is hereby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: September 19, 2008